# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE:    **NORMAN AND LISA FRITZ,**        Case No. 05-45778-PP

                **Debtor.**        Chapter 13

---

**NORMAN AND LISA FRITZ,**

                **Plaintiffs,**

vs.                            Adv. No. 06-2085

**USA FUNDING CORPORATION and
GMAC MORTGAGE CORPORATION,**

                **Defendants.**

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART USA FUNDING CORPORATION'S MOTION TO DISMISS, AND GRANTING GMAC MORTGAGE CORPORATION'S MOTION TO DISMISS

---

Defendants USA Funding Corporation (hereinafter referred to as "USA Funding") and GMAC Mortgage Corporation (hereinafter referred to as "GMAC") have filed motions to dismiss this adversary action. For the reasons that follow, USA Funding's motion to dismiss is **GRANTED** in part and **DENIED** in part, and GMAC's motion to dismiss is **GRANTED**.

### I.    FACTUAL BACKGROUND

**A.    The Creation of the Note and the Mortgage**

On January 31, 2003, the plaintiffs purchased property located at 4301 North Pine Ridge Circle in Racine, Wisconsin (hereinafter referred to as "the property").

1

(Affidavit of Thomas Moan (hereinafter referred to as "Moan Aff.") ¶¶ 3-5, Docket Number 12.) To purchase the property, the plaintiffs took out a mortgage loan from USA Funding, and executed a note evidencing the debt. (Moan Aff. ¶ 4, Ex. A.) The plaintiffs executed this note on January 31, 2003, in the amount of $170,720.00. (Moan Aff. Ex. A at 1-2.) By executing the note, the plaintiffs agreed to make monthly payments of $1,193.70 on the first of each month, beginning on March 1, 2003. (Moan Aff. Ex. A at 1.) The plaintiffs also executed a mortgage to USA Funding on January 31, 2003, to secure the debt evidenced in the note. (Moan Aff. Ex. B.)

On the same date, USA Funding executed a document entitled "Allonge to Note" (hereinafter referred to as "Allonge").[1] (Moan Aff. Ex. A at 3.) The Allonge reads as follows:

> Loan No.
>
> Allonge to Note dated January 31, 2003
> in favor of USA Funding Corp
> and executed by Norman A. Fritz and Lisa A. Fritz, husband and wife,
> for the Property located at: 4301 North Pine Ridge Circle, Racine, WI 53403
>
> PAY TO THE ORDER OF

---

[1] Black's Law Dictionary defines an "allonge" as:

[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements . . . Current [UCC] § 3-204(a) . . . provides that "a paper affixed to the instrument is part of the instrument." The UCC comment makes clear that the allonge is valid even if space is available on the instrument.

BLACK'S LAW DICTIONARY 83 (8th ed. 2004).

2

GMAC Bank
WITHOUT RECOURSE
This January 31, 2003

USA FUNDING CORP

(Moan Aff. Ex. A at 3.) The Allonge was signed by Roger Harrison, the Assistant Vice President of USA Funding. (Moan Aff. Ex. A at 3.)

## B.    The Transfer of the Mortgage

USA Funding stated in one of its pleadings that it "assigned the debtors' mortgage to GMAC . . . on March 27, 2003 [and] [o]n that day, USA Funding ceased receiving payments for the mortgage from the [plaintiffs]." (USA Funding's Motion to Reconsider at 3.) In its pleadings, GMAC asserted that the mortgage was "subsequently assigned" to Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS") as the mortgagee of record and as nominee of GMAC. (Moan Aff. ¶ 4.) GMAC described itself as "the servicer and holder of the note." (GMAC's Supp. Reply Mem. at 5.)

## C.    The Foreclosure Action

Eventually, the plaintiffs defaulted on their mortgage payments. On March 9, 2005, MERS, as the mortgagee of record and as the nominee of GMAC, filed a foreclosure action against the plaintiffs in Racine County Circuit Court. (Moan Aff. ¶ 8, Ex. F.) The caption of the foreclosure action described the plaintiff as "[MERS], as Mortgagee of Record and as nominee of the servicer, [GMAC] 500 Enterprise Road,

3

Suite 150 Horsham, PA 19044-0969."[2]  (Moan Aff. Ex. F.)

The plaintiffs did not file an answer in response to the foreclosure complaint. (Moan Aff. ¶ 9, Ex. G at 1.)  On April 22, 2005, the Racine County court awarded MERS, as the mortgagee of record and as the nominee of GMAC, a default judgment of foreclosure in the amount of $197,003.40.  (Moan Aff. ¶ 10, Ex. G.)  The court noted that the plaintiffs had a six-month redemption period, which expired October 22, 2005. (Moan Aff. ¶ 10, Ex. G.)

**D.     The Bankruptcy Action**

The plaintiffs filed their bankruptcy petition on November 14, 2005, one day before a sheriff's sale of the property was to take place. (Moan Aff. ¶ 12.) A week later, on November 22, 2005, MERS filed a proof of claim in the total amount of $47,735.10 (hereinafter referred to as "MERS claim").  That proof of claim stated that the name of creditor–that is, "the person or other entity to whom the debtor owes money or property"–was MERS "as Mortgagee of Record and as nominee of the servicer, GMAC." (MERS claim at 1.)  The MERS proof of claim gave GMAC's address as the address where notices should be sent–the same address that was included in the caption of the state foreclosure action. (MERS claim at 1.) The exhibit attached to the proof of claim included the note, the Allonge, and the January 31, 2003 mortgage, which listed USA Funding as the lender.

_____

[2] 500 Enterprise Road, Suite 150, Horsham, PA 19044-0969 is the address of GMAC, not MERS.

### E.    The Adversary Proceeding

1.    <u>The Complaint</u>

On January 30, 2006, the plaintiffs filed this adversary action, asserting four claims against the defendants. The first count alleged that the defendants either failed to provide disclosures required by the Truth in Lending Act (hereinafter referred to as "TILA"), or gave confusing disclosures in violation of that act. Count Two alleged that the defendants committed fraud by concealing and misrepresenting the yield spread premium. Count Three alleged that the defendants fraudulently concealed private mortgage insurance. Count Four alleged that the concealment and failure to disclose alleged in the first three counts violated the Wisconsin Consumer Protection Act. Finally, Count Five stated that the plaintiffs were asserting the affirmative defense of recoupment. (Compl. ¶¶ 9-28.)

The plaintiffs requested that the Court grant the following forms of relief:

(1) declare that the defendants' actions violated TILA;

(2) enjoin the defendants' actions;

(3) grant relief pursuant to "15 U.S.C. § 1640 of twice the finance charge, $2000.00 penalty and actual damages;"

(4) "[e]nter judgment in favor of Plaintiff for statutory damages, costs and attorneys' fees as provided by 15 U.S.C. §§ 1640(a);"

(5) "[e]nter judgment in favor of Plaintiff for statutory damages, costs, and attorneys fees for the fraud concealment to be proved at trial;"

5

(6) "[a]ward Plaintiff compensatory damages in an amount to be determined at trial;"

(7) "[a]ward Plaintiff actual and exemplary damages as allowed by law for [yield spread premium] and [private mortgage insurance] fraud;"

(8) "[a]ward Plaintiff their reasonable and necessary attorney[']s fees and costs;" and

(9) award the plaintiffs pre-judgment and post-judgment interest. (Compl. 8-9.)

In addition, the complaint stated that "[e]ach and every cause of action [stated in the complaint] is now stated in defense of a foreclosure by recoupment" and that the plaintiffs filed the complaint against the defendants "to obtain injunctive relief from enforcement of any and all foreclosure related remedies." (Compl. at 1, 4.)

2.    The Motions to Dismiss

Both defendants USA Funding and GMAC filed motions to dismiss the complaint. USA Funding argued in its motion that the plaintiffs' claims pursuant to TILA and the Wisconsin Consumer Protection Act were barred by the statute of limitations. GMAC argued in its motion that the plaintiffs lacked standing to bring suit, that the Rooker-Feldman doctrine deprived the Court of subject matter jurisdiction over the case, and that the TILA claims were barred by the statute of limitations.

This Court held two hearings on the motions to dismiss. At the time of the hearings, the Court concluded that the plaintiffs had standing to sue, and that the

6

plaintiffs' claims were not barred by the statute of limitations. (Docket Number 21.) With regard to the <u>Rooker-Feldman</u> issue, however, the Court asked the parties to provide further briefing.[3] The defendants each filed supplemental briefs in response to the Court's request.

In its supplemental brief, USA Funding asked the Court to reconsider its initial ruling that the statute of limitations did not apply. GMAC asked the Court to reconsider its ruling on the Wisconsin Consumer Protection Act claim[4]. The Court denied USA Funding's motion to reconsider. (Docket Number 31.)

## II. ARGUMENTS PRESENTED

### A.    USA Funding's Arguments

In its supplemental brief in support of its motion to dismiss, USA Funding argues that the <u>Rooker-Feldman</u> doctrine applies in the present case because the plaintiffs were injured by the state foreclosure judgment, and the plaintiffs' adversary claims essentially seek to disrupt that state court judgment. USA Funding further

---

[3] The Court asked the parties to provide

more information on the relevance of the fact that the state court action was filed by MERS as nominee for GMAC (rather than by GMAC itself), and on the question of whether the TILA claims could have been raised in the state court foreclosure action and, if so, the relevance of the fact to the application of [<u>Rooker-Feldman</u>].

(Docket Number 21.)

[4] At the second hearing, the Court ordered the Wisconsin Consumer Protection Act claim dismissed because the plaintiffs' claim under the Wisconsin Consumer Protection Act exceeded the statutory limit of $25,000.

7

notes that the plaintiffs could have raised their TILA claims in the foreclosure action, but failed to do so.

In addition, USA Funding filed a motion requesting that "the Court consider as grounds [for the motion to dismiss] the record developed, to date, and the arguments expressed in the Brief of GMAC . . . dated July 24, 2006." (Docket Number 28 at 1.) Therefore, USA Funding adopted GMAC's argument (discussed <u>infra</u>) that the doctrine of claim preclusion bars the plaintiffs' claims.

## B.     GMAC's Arguments

In its supplemental brief in support of its motion to dismiss, GMAC argues that the <u>Rooker-Feldman</u> doctrine deprives this Court of jurisdiction over the adversary case, because the plaintiffs now are trying to overturn the state foreclosure judgment by reducing the amount the state court determined the plaintiffs owe to the creditor. GMAC argues that the plaintiffs' adversary "claims are a collateral attack on the foreclosure judgment, since by implication, their complaint asserts that the judgment of foreclosure should not have been entered." (GMAC's Supp. Reply Mem. at 3.) GMAC further argues that the plaintiffs had an opportunity to raise their TILA claims in state court, and that they should have done so because those claims are "inextricably intertwined" with the foreclosure judgment.

In the alternative, GMAC argues that the plaintiffs' claims are barred by the doctrine of claim preclusion. GMAC asserts that Wisconsin law precludes subsequent litigation where there is an identity between the parties or their privies in the prior

8

and present suits. Here, GMAC contends that MERS, acting as its nominee, stands in privity with GMAC, and that if the plaintiffs "wanted to take issue with their mortgage loan they should have filed a counterclaim against GMAC in the state court foreclosure action." (GMAC's Supp. Reply Mem. at 5.)

## C.     The Plaintiffs' Arguments

The plaintiffs argue that the <u>Rooker-Feldman</u> doctrine does not deprive this Court of jurisdiction, because neither USA Funding nor GMAC was a party to the state foreclosure proceeding. Therefore, the plaintiffs contend, the claims in the two cases are not "inextricably intertwined." The plaintiffs contend that the defendants have failed to cite cases where courts have extended the <u>Rooker-Feldman</u> doctrine to bar claims against non-parties to a state court proceeding. They argue further that the current proceeding is not analogous to an appeal of a state court judgment, again because neither USA Funding nor GMAC were a party to the state court foreclosure action. Finally, the plaintiffs insist that they are asserting new claims against new defendants who were not parties to the prior proceeding. For all of these reasons, the plaintiffs contend that the <u>Rooker-Feldman</u> doctrine does not apply.

In response to GMAC's argument that claim preclusion bars their suit, the plaintiffs argue that the doctrine of claim preclusion is inapplicable here because there is no identity of parties between the plaintiffs and the defendants in this case and the plaintiffs and the defendants in the state foreclosure action. They argue that,

> as shown by the materials attached to the Affidavit of Douglas P. Dehler dated July 10, 2006, as well as the caption of the complaint in the state

9

court proceeding, it is apparent that GMAC assigned its entire interest
in the [plaintiffs'] mortgage to MERS. As the mortgagee of record, MERS
(not GMAC) was the proper party to bring the state foreclosure action.[5]

(Pl.'s Supp. Mem. at 3.)  They point out that GMAC has not provided an affidavit or

other evidence attempting to explain its relationship with MERS, and therefore they

argue that GMAC has failed to meet its burden of proving that it is in privity with

MERS.

The plaintiffs also argue that liability under TILA, pursuant to 42 U.S.C. §§

1640 and 1641, flows to creditors, not mortgagees, and point out that there is no

---

[5] The materials attached to the Affidavit of Douglas P. Dehler (hereinafter
referred to as "Dehler Aff.") consist of two documents downloaded from the MERS
website. (Dehler Aff. ¶¶ 2-3.)  The first document, attached as exhibit A, states that
"MERS was created by the mortgage banking industry to streamline the mortgage
process by using electronic commerce to eliminate paper." (Dehler Aff. Ex. A.)  The
document further explains that "MERS acts as nominee in the county land records
for the lender and servicer.  Any loan on the MERS® System is inoculated against
future assignments because MERS remains the nominal mortgagee no matter how
many times servicing is traded." (Dehler Aff. Ex. A.)
The second document, attached as exhibit B, lists MERS' recommended
foreclosure procedures for the state of Wisconsin.  The document states, in part, that

> [m]ortgages are typically used and are foreclosed judicially.  The
> caption of the complaint should name [MERS] as the plaintiff.  The
> body of the complaint should be the same as when foreclosing in the
> name of the servicer.  MERS stands in the same shoes as the servicer
> to the extent that it is not the beneficial owner of the promissory note.
> A secondary market investor will still be the owner of the promissory
> note. . . . If the debtor declares bankruptcy, the proof of claim should be
> filed jointly in the name of [MERS] and the servicer.  It is advised to
> file in both names in order to disclose to the court the relationship of
> MERS and the servicer.  The address to be used is the servicer's
> address so that all trustee payments go directly to the servicer, not
> MERS.

(Dehler Aff. Ex. B.)

evidence that GMAC assigned the loan, as opposed to the mortgage, to MERS. As a result, they argue that the interests of MERS and GMAC are not identical for the purposes of the privity analysis, because only the creditor, GMAC, faces potential liability under TILA.

### III.    BURDEN OF PROOF

The defendants filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging the plaintiffs' failure to state a claim upon which relief may be granted. When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all facts alleged in the . . . complaint and . . . draw all reasonable inferences from the pleadings in favor of the [plaintiff]." Gillman v. Burlington Northern R.R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989). "While a complaint . . . does not need detailed factual allegations [to survive a motion to dismiss] . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted.) When challenging a motion to dismiss a complaint pursuant to Rule 12(b)(6), the movant's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.

In addition, although neither party cited FED. R. CIV. P. 12(b)(1), both parties argue that this Court lacks subject matter jurisdiction over the plaintiffs' complaint by

11

virtue of the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine is jurisdictional in nature, and thus it may be raised at any time for the parties and by the court *sua sponte*." Lewis v. Anderson, 308 F.3d 768, 771 (7th Cir. 2002), *cert. denied sub nom.*, Lewis v. Stolle, 538 U.S. 908 (2003). The Court therefore construes both defendants' motions as motions to dismiss pursuant to Rule 12(b)(1), for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When an issue facing the Court is jurisdictional, the Court has the "authority under Rule 12(b)(1) to look behind the plaintiff's allegations and make factual findings for purposes of assessing its subject matter jurisdiction." Palay v. U.S., 349 F.3d 418, 424-25 (7th Cir. 2003).

## IV. LEGAL ANALYSIS

**A. This Court Retains Subject Matter Jurisdiction Over the Plaintiff's Claims Against USA Funding, But the Rooker-Feldman Doctrine Deprives the Court of Subject Matter Jurisdiction Over Some of the Plaintiffs' Claims Against GMAC.**

### 1. The *Rooker-Feldman* Doctrine

The Rooker-Feldman doctrine emerged from two different United States Supreme Court cases, Rooker v. Fid. Trust Co., 263 U.S. 413 (1923) and D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983). Put simply, the doctrine prohibits inferior federal courts from reviewing state court decisions via direct or indirect collateral attacks. Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 476. It stands for the proposition that "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999). Put another way, a party dissatisfied with a

12

state court judgment cannot jump directly from that judgment to federal court; that party first must pursue its appellate rights in the state court system, and then in the United States Supreme Court. Id.

The Supreme Court has made clear that the Rooker-Feldman doctrine is quite narrow, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). When a defendant argues that a federal court should abstain from exercising subject matter jurisdiction based on the Rooker-Feldman doctrine, the question before the federal court is " 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction.' " Zurich Amer. Ins. Co. v. Super. Ct., 326 F.3d 816, 822 (7th Cir. 2003) (quoting Garry v. Geils, 82 F.3d 1362, 1365-66 (7th Cir. 1996)).

Accordingly, when a party alleges that the Rooker-Feldman doctrine prevents a federal court from exercising subject matter jurisdiction, the court must focus its attention on whether the party seeks to set aside a state court judgment, or whether the party instead is presenting an independent claim. Taylor v. Fed. Nat. Mortg. Ass'n, 374 F.3d 529, 532 (7th Cir. 2004). The Seventh Circuit has discussed the difference between a claim that seeks to overturn directly a state court judgment and a claim that

13

is independent because it alleges a prior injury that a state court failed to remedy.  See Taylor, 374 F.3d at 533; Brokaw v. Weaver, 305 F.3d 660, 664-65 (7th Cir. 2002); Long, 182 F.3d at 555; Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 702 (7th Cir. 1998).  A case that seeks to set aside a state court judgment is, in effect, an appeal, and clearly is barred by the Rooker-Feldman doctrine.  Taylor, 374 F.3d at 532.

The more difficult situation arises where a party raises a claim in federal court that it did not raise in the state court action.  Such a claim may be subject to the Rooker-Feldman doctrine if the claim is "inextricably intertwined with a state court judgment."  Taylor, 374 F.3d at 533 (internal quotations omitted).  A claim is "inextricably intertwined" if it "indirectly seeks to set aside a state court judgment." Id.  As the Seventh Circuit has noted, although "inextricably intertwined is a somewhat metaphysical concept, the crucial point is whether the district court is in essence being called upon to review the state-court decision."  Id. (internal quotations omitted).

2.  Application of the *Rooker-Feldman* Doctrine to the Instant Facts

a.  *USA Funding was not a party to the state foreclosure action; therefore, the plaintiffs' claims against USA Funding do not seek to redress an injury worked by the state foreclosure judgment, and Rooker-Feldman does not deprive this Court of jurisdiction over those claims.*

The state court judgment at issue in the present case is the default foreclosure judgment issued by the Racine County Circuit Court on April 22, 2005.  The caption of the case in which that judgment issued described the plaintiff as follows: "Mortgage Electronic Registration Systems, Inc., as Mortgagee of Record and as nominee of the

14

servicer, GMAC Mortgage Corporation." (Moan Aff. Ex. G.) USA Funding was not mentioned in the caption of the foreclosure action; it was not a party to that action.

In support of its motion to dismiss, USA Funding states that "[t]he 10th Circuit Court of Appeals addressed a situation involving a [TILA] claim being brought after a state court foreclosure had been rendered, and held that *Rooker-Feldman* bars a [TILA] claim which would overturn a mortgage foreclosure judgment." (Def.'s Mem. dated July 19, 2006, at 4.) While USA Funding fails to provide a citation to support this assertion, the Court assumes that it is referring to Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1147 (10th Cir. 2004), the Tenth Circuit case previously cited in its memorandum. The Court does not find Crutchfield persuasive because of a key factual distinction.

In Crutchfield, lender Countrywide Home Loans, through MERS, took a lien against a piece of property. Id. at 1146. The plaintiff subsequently inherited title to the property subject to this lien, and began making mortgage payments to Countrywide. MERS later obtained a default judgment foreclosing on the mortgage. The plaintiff filed suit in federal court against MERS and Countrywide, seeking a declaratory judgment that the plaintiff had rescinded his assumption of the mortgage pursuant to TILA. The defendants argued that the Rooker-Feldman doctrine prevented the federal court from issuing a declaratory judgment that the plaintiff had rescinded the assumption of the mortgage. The Crutchfield court held that the Rooker-Feldman doctrine barred the federal court from deciding this issue because it was

15

"inextricably intertwined" with the state court foreclosure judgment. Id. at 1148-49.

In relying on the Crutchfield decision, USA Funding fails to note a critical difference between the facts of Crutchfield and those in the instant case. The note at issue in this case is attached as Exhibit A to the affidavit of Thomas Moan. (Moan Aff. Ex. A.) On the first two pages of Exhibit A is a copy of the original note, executed by the plaintiffs to USA Funding on January 31, 2003. (Moan Aff. Ex. A at 1-2.) The third page of Exhibit A is entitled "Allonge to Note" and states as follows:

> Loan No.
>
> Allonge to Note dated January 31, 2003
> in favor of USA Funding Corp
> and executed by Norman A. Fritz and Lisa A. Fritz, husband and wife,
> for the Property located at: 4301 North Pine Ridge Circle, Racine, WI
> 53403
>
> PAY TO THE ORDER[6] OF
> GMAC Bank
> WITHOUT RECOURSE[7]
> This January 31, 2003.

(Moan Aff. Ex. A at 3.) The allonge is signed by Roger Harrison, the Assistant Vice President of USA Funding. (Moan Aff. Ex. A at 3.)

Reading the note together with the Allonge, it appears that USA Funding transferred the note to GMAC on January 31, 2003. In further support of this

---

[6] The phrase "payable to order" is defined as "payable only to a specified payee." BLACK'S LAW DICTIONARY 1165 (8th ed. 2004).

[7] The phrase "without recourse" is defined as "(in an indorsement) without liability to subsequent holders. With this stipulation, one who indorses an instrument indicates that he or she has no further liability to any subsequent holder for payment." BLACK'S LAW DICTIONARY 1632-33 (8th ed. 2004).

16

conclusion, the Court looks to USA Funding's own statement that it "assigned the debtors' mortgage to GMAC . . . on March 27, 2003 [and] [o]n that day, USA Funding ceased receiving payments for the mortgage from the [plaintiffs]." (USA Funding's Motion to Reconsider at 3.) Similarly, GMAC describes itself as "the servicer and *holder* of the note." (GMAC's Supp. Reply Mem. at 5) (emphasis added.) In the present case, then, USA Funding transferred its interest in the note to GMAC as of March 2003. At the time the foreclosure judgment issued, USA Funding no longer had *any* interest in the underlying note.

In contrast, in <u>Crutchfield</u> Countrywide Home Loans *did* have an interest in the underlying note. As stated in <u>Crutchfield</u>, Countrywide, through MERS, took a lien against the property–it did not sell its interest in the note to another entity. Because, unlike Countrywide, USA Funding transferred the entirety of its interest to a third party, the Court concludes that the facts in this case are sufficiently different from those in <u>Crutchfield</u> to render <u>Crutchfield</u> inapplicable here.

Further, because USA Funding transferred its interest in the note to GMAC, the Racine County foreclosure action filed by MERS is not "inextricably intertwined" with the plaintiffs' federal cause of action against USA Funding. A federal court's finding against USA Funding on the plaintiffs' TILA claims would have absolutely no effect on the Racine County foreclosure judgment. In contrast, in <u>Crutchfield</u> a finding against Countrywide on the plaintiff's TILA claims would have negated the underlying foreclosure judgment, because the federal plaintiff in that case sought to rescind his

Case 06-02085-pp    Doc 36    Filed 10/05/07    Page 17 of 34

assumption of the mortgage pursuant to TILA, and Countrywide had retained its interest in the note and mortgage underlying the state foreclosure judgment.

As the Tenth Circuit stated,

> The effect of the state court judgment was to foreclose the mortgage on the home that [the plaintiff] inherited from his mother. If [the plaintiff] were to receive his requested relief, the district court would issue a declaratory judgment that he had validly rescinded the mortgage and thus removed the lien on the property. [The plaintiff] is thus asking a federal court to do precisely what *Rooker-Feldman* prohibits: to undo the effect of a state court judgment.

Id. at 1148.

The Court also notes that the plaintiffs in this case could not have advanced their TILA arguments against USA Funding in the underlying foreclosure action, because USA Funding was not a party to, and had no interest in, that action. It had long since transferred its interest in the note to GMAC. Therefore, the Court concludes that the Rooker-Feldman doctrine does not apply to bar the plaintiffs' federal claims against USA Funding, and the Court has subject matter jurisdiction to hear those claims.

      b.    *GMAC was a party to the state foreclosure action, and therefore the Court must determine whether the plaintiffs' claims against it seek to overturn the state foreclosure judgment, such that Rooker-Feldman deprive this Court of jurisdiction over those claims.*

      i.    GMAC Was a Party to the State Court Suit.

In the underlying foreclosure action, the plaintiff was "Mortgage Electronic Registration Systems, Inc., as Mortgagee of Record and as nominee of the servicer, GMAC Mortgage Corporation, 500 Enterprise Road, Suit 150, Horsham, PA 19044-

0969." (Moan Aff. Ex. F.) In the complaint MERS filed to initiate the foreclosure action in Racine County Circuit Court, MERS described itself as follows: "The plaintiff is the holder of legal title to a recorded mortgage on real estate located in this county and the loan servicer is the duly authorized agent for the owner or holder of a certain note secured by the mortgage." (Moan Aff. Ex. F.) Black's Law Dictionary defines a nominee as "[a] person designated to act in place of another, usu[ally] in a very limited way. . . . A person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." BLACK'S LAW DICTIONARY 1076 (8th ed. 2004).

By March 27, 2003, USA Funding had transferred both the note and the mortgage to GMAC. At some point in time, GMAC appears to have assigned its interest in the mortgage to MERS, so that MERS became the mortgagee of record. While MERS was the entity that initiated the foreclosure proceedings, MERS did so only by virtue of the authority given to it by GMAC. Furthermore, while GMAC technically was not the plaintiff in the foreclosure action, GMAC was listed in the caption as the servicer, and it was GMAC which nominated MERS to act on its behalf. While GMAC did not address in its briefs the relationship between GMAC and MERS, it is clear that MERS acted solely for the benefit of GMAC, the holder of the note and the entity entitled to payment of the foreclosure judgment entered by the Racine County Circuit Court.

19

ii.    Some of the Plaintiffs' Claims Against GMAC Effectively
       Seek Reversal of the State Foreclosure Judgment.

This Court's conclusion that GMAC was a party to the state court foreclosure action does not end the Rooker-Feldman inquiry. The Court next must determine whether the claims that the plaintiffs assert against GMAC in this court seek to overturn, or set aside, the state court judgment. The Court concludes that some of the plaintiffs' claims seek to do just that, and concludes that it does not have subject matter jurisdiction over those particular claims.

As discussed in the facts recounted in § I(E) above, the plaintiffs asserted five counts against the defendants, three of which alleged varying violations of TILA and the fifth of which demanded relief in the form of recoupment. The plaintiffs request various forms of relief for these alleged violations. They ask the Court to find that the defendants violated TILA. They ask for statutory, compensatory and actual damages for those alleged violations, they ask for attorneys' fees and pre- and post-judgment interest. In addition, they request "injunctive relief from enforcement of any and all foreclosure related remedies, if any such action is taken, including attempts to take possession of the Plaintiff's [sic] property through unlawful detainer procedures under Wisconsin law." (Compl. at 1.) They also state that "[e]ach and every cause of action herein is now stated in defense of a foreclosure by recoupment." (Compl. ¶ 10.)

AA.    **Declaratory Judgment and Damages**

To determine whether any of the plaintiffs' claims run afoul of the Rooker-Feldman doctrine, the Court necessarily must look to the form of relief the plaintiffs

20

demand. If, for example, the sole remedy that the plaintiffs sought was a declaratory judgment that GMAC had violated TILA, would such a judgment overturn, or set aside, the state court foreclosure action? It would not. If the plaintiffs sought only monetary damages, would an award of such damages overturn, or set aside, the state court foreclosure action? It does not appear so.

The problem, from a <u>Rooker-Feldman</u> point of view, arises from the fact that the plaintiffs also assert the defense of recoupment against the foreclosure and demand injunctive relief to bar enforcement of the foreclosure action.

### BB.  **Recoupment**

Recoupment is defined as "an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction." <u>Brown v. General Motors Corp.</u>, 152 B.R. 935, 938 (W.D. Wis. 1993). "Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted." <u>Id</u>. In other words, "the right of recoupment carries with it no right to payment." <u>Id</u>.

Here, the Court finds that the defense of recoupment is "inextricably intertwined" with the state foreclosure judgment. The Racine County foreclosure judgment declared that the plaintiffs owed "$197,003.40" "under the terms of the note and mortgage," and the plaintiffs seek to use the theory of recoupment to reduce this amount. (Moan Aff. Ex. G at 2.) Recoupment is "an equitable defense which enables a defendant to *reduce liability on a plaintiff's claim* by asserting an obligation of the

21

plaintiff which *arose out of the same transaction*." <u>Brown</u>, 152 B.R. at 938 (emphasis

added). To prevail on a claim of recoupment in this Court, the plaintiffs must show

that GMAC has an obligation to the plaintiffs which arose out of the same mortgage

transaction as GMAC's claim against the plaintiffs. If the plaintiffs show the existence

of such an obligation, their relief would be to reduce the liability on GMAC's claim

against them–the foreclosure judgment in state court–of $197,003.40. This Court

cannot grant such relief, because to do so it would be required to overturn the state

foreclosure judgment, in direct contravention of the <u>Rooker-Feldman</u> doctrine.

### CC. Injunctive Relief

Similarly, if this Court were to grant the plaintiffs' request for injunctive relief,

it would be required to overturn the state foreclosure judgment. To "enjoin," or bar,

MERS/GMAC from enforcing the foreclosure judgment it obtained in state court would

directly invalidate that state court judgment as surely as if the plaintiffs had appealed

the foreclosure judgment and prevailed on that appeal. For this Court to take such an

action would be in direct contravention of the <u>Rooker-Feldman</u> doctrine.

Accordingly, the Court holds that the <u>Rooker-Feldman</u> doctrine deprives it of

subject matter jurisdiction over the plaintiffs' requests for injunctive relief and

recoupment against GMAC.

**B.      The Doctrine of Claim Preclusion Does Not Bar the Plaintiffs' Claims
Against USA Funding, But Does Bar All of the Plaintiffs' Claims Against
GMAC.**

USA Funding nominally has argued that the plaintiffs' claims against it are

barred by the doctrine of claim preclusion. (See Docket Number 28.) The Court finds, however, that claim preclusion does not apply to the plaintiffs' claims against USA Funding. In contrast, even if the Court had not found that the <u>Rooker-Feldman</u> doctrine deprived it of subject matter jurisdiction over the plaintiffs' claims for recoupment and injunctive relief against GMAC, it finds that those claims–and, indeed, all of the plaintiffs' claims against GMAC–are barred by the doctrine of claim preclusion.[8]

### 1. The Doctrine of Claim Preclusion

The doctrine of claim preclusion holds that

> [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.

<u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981). "In effect, the doctrine of claim preclusion determines whether matters undecided in a prior lawsuit fall within the bounds of that prior judgment." <u>Kruckenberg v. Harvey</u>, 694 N.W.2d 879, 885 (Wis. 2005). A federal court must "apply the preclusion law of the state that rendered

---

[8] The term claim preclusion is also known as *res judicata*. <u>Sopha v. Owens-Corning Fiberglas Corp.</u>, 601 N.W.2d 627, 636 n. 25 (Wis.1999). The Northern District of Illinois noted that "'dismissal under Rule 12(b)(6) is appropriate when a defendant raises *res judicata* as an affirmative defense and it is clear from the complaint's face, and matters of which the district court can take judicial notice, that the plaintiff's claims fail as a matter of law.'" <u>Byrd v. Homecomings Financial Network</u>, 407 F.Supp.2d 937, 942 (N.D.Ill. 2005) (quoting <u>Conopco, Inc. v. Roll Int'l</u>, 231 F.3d 82, 86-87 (2d Cir.2000)).

23

the judgment to determine whether *res judicata* controls th[e] case." <u>Hicks v. Midwest Transit, Inc.</u>, 479 F.3d 468, 471 (7th Cir. 2007). The Seventh Circuit noted that

> [a]n exception to the *res judicata* rule exists if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. . . . A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause.

<u>Licari v. City of Chicago</u>, 298 F.3d 664, 666-67 (7th Cir. 2002) (citing <u>Pliska v. City of Stevens Point, Wisconsin</u>, 823 F.2d 1168, 1172 (7th Cir.1987)).

    2.    <u>The Wisconsin Law of Claim Preclusion</u>

In Wisconsin, "[t]he doctrine of claim preclusion provides that a final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." <u>Sopha</u>, 601 N.W.2d at 636. "Ordinarily a final judgment is conclusive in all subsequent actions as to all matters 'which were litigated or which might have been litigated in the former proceedings.'" <u>Sopha</u>, 601 N.W.2d at 637 (quoting <u>DePratt v. West Bend Mut. Ins. Co.</u>, 334 N.W.2d 883, 885 (Wis. 1983)). The burden of proving claim preclusion is upon the party asserting that claim preclusion applies. <u>Pasko v. City of Milwaukee</u>, 643 N.W.2d 72, 78 (Wis. 2002).

For claim preclusion to apply, Wisconsin courts require the presence of three factors: (1) an "identity between the parties or their privies in the prior and present suits"; (2) the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction"; and (3) an "identity of the causes of action in the two suits." <u>Sopha</u>, 601 N.W.2d at 637 (footnotes omitted). Courts are not to apply these factors rigidly.

24

Rather, the concept of fairness lies behind the doctrine of claim preclusion. See e.g., Pasko, 643 N.W.2d at 80.

3.  Application of the Wisconsin Standard to the Facts of the Present Case.

   a.  *Identity Between Parties*

Turning to the three factors, the Court first must look at the question of privity between the parties. "Privity exists when a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right in respect to the subject matter involved." Pasko, 643 N.W.2d at 78. (citation omitted.) "In other words, privity compares the interests of a party to a first action with a nonparty to determine whether the interests of the nonparty were represented in the first action." Id. at 79. The Wisconsin Supreme Court has noted that "when deciding whether to apply claim preclusion to a nonparty's action, it is appropriate to consider whether such application will result in unfairness to the nonparty. . . . claim preclusion should be applied so as not to deprive a party of a full and fair determination of an issue." Id. at 80 (internal citations omitted).

   i.  USA Funding

As noted in Section IV(A)(2)(a) above, USA Funding was not a party to, and had no interest in, the underlying state court foreclosure action in Racine County. For this reason, USA Funding is not "so identified in interest with a party to former litigation [in this case, MERS] that [it] . . . represents precisely the same legal right in respect to the subject matter involved." Id. at 78. Therefore, USA Funding was not in privity

25

with MERS.

Because the first claim preclusion factor does not exist with regard to the plaintiffs' claims against USA Funding, the Court need not proceed to review the other claim preclusion factors with regard to USA Funding. The doctrine of claim preclusion does not apply to bar the plaintiffs' claims against USA Funding.

ii.    GMAC

In contrast, GMAC was in privity with MERS in the underlying state court foreclosure action. MERS was the nominee of GMAC. As stated above, a nominee is defined as "[a] person designated to act in place of another, usu[ally] in a very limited way. . . . A person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." BLACK'S LAW DICTIONARY 1076 (8th ed. 2004). Here, MERS held bare legal title of the mortgage on the plaintiffs' property for the benefit of GMAC, the holder of the note and the servicer of the loan.

Not only was MERS the nominee of GMAC, but GMAC was listed in the caption of the foreclosure action. Furthermore, the first paragraph of the complaint stated that "[t]he plaintiff is the holder of legal title to a recorded mortgage on real estate located in this county and the loan servicer is the duly authorized agent for the owner and holder of a certain note secured by the mortgage." (Moan Aff. Ex. F.) Because MERS was the nominee of GMAC, MERS stood in privity with GMAC. GMAC "[was] so identified in interest with a party to former litigation [in this case, MERS] that he or she represent[ed] precisely the same legal right in respect to the subject matter

26

involved." Pasko, 643 N.W.2d at 78. The interests of GMAC in this action are identical to the interests of MERS in the state court foreclosure action. Indeed, MERS is the nominee of GMAC and, as such, represented interests in the state court foreclosure action that were identical to the interests of GMAC in this action.

The plaintiffs argue that, pursuant to 42 U.S.C. §§ 1640 and 1641, liability under TILA flows to creditors, not mortgagees. Thus, they argue, because there is no evidence that GMAC assigned the loan–as opposed to the mortgage–to MERS, the interests of MERS and GMAC are not identical. They argue that only GMAC, the creditor, faces potential liability under TILA.

In the underlying state foreclosure action, however, MERS noted that it was the nominee of creditor GMAC, and was undertaking the foreclosure action on GMAC's behalf. It is clear that MERS stood in the shoes of creditor GMAC during the foreclosure action. While MERS would not be liable technically under TILA because MERS was not the creditor, the plaintiffs still could have advanced their TILA actions against MERS, because MERS was the creditor's nominee and was representing the creditor's interests. This fact meant that the interests of MERS were identical to the interests of GMAC.

The Court concludes, therefore, that GMAC was in privity with MERS in the Racine County foreclosure action, and that the first factor in the claim preclusion analysis is satisfied.

27

### b.     Result of the State Court Action

Turning to the second factor, the Racine County Circuit Court–which had proper jurisdiction over the action–issued a final judgment on the merits in the prior state foreclosure litigation.  On April 22, 2005, the court issued a final default judgment. (Moan Aff. Ex. G.)  That judgment stated that the plaintiffs owed MERS, as nominee of GMAC, $197,003.40, and that the property "shall be sold at public auction under the direction of the sheriff, at any time after six months from the date of entry of judgment." (Moan Aff. Ex. G ¶ 6.)  This was a final judgment of the Racine County Circuit Court, a court with jurisdiction to foreclose on property within Racine County; therefore, the second factor is satisfied.

### c.     Identity of Claims

With regard to the final factor in the analysis, the Court finds that there is an identity of the claims between the state foreclosure action and the present case. "Wisconsin has adopted the 'transactional approach' set forth in the Restatement (Second) of Judgments to determine whether there is an identity of the claims between the two suits." Kruckenberg v. Harvey, 694 N.W.2d 879, 886 (Wis. 2005).  Pursuant to the transactional approach, "a valid and final judgment in an action extinguishes all rights to remedies against a defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (citing Restatement (Second) of Judgments § 24(1) (1982)).  As noted by the Wisconsin Supreme Court, "[u]nder the transactional approach, the legal theories, remedies

28

sought, and evidence used may be different between the first and second actions. The concept of a transaction connotes a common nucleus of operative facts." Id. (footnote omitted).

The claims in the present case arose out of the note and mortgage that the plaintiffs executed on January 31, 2003. The foreclosure action in Racine County Circuit Court arose out of the note and mortgage that the plaintiffs execute on January 31, 2003, and the plaintiffs' failure to pay the amount due on the note as promised. The execution of the note and mortgage, and the plaintiffs' failure to fulfill the promise to pay on the note as required, are related transactions such that there is an identity of the claims between the two suits. Therefore, the third factor of the claim preclusion analysis is present in this case.

        d.    *Full and Fair Opportunity to Litigate*

As noted above, there is an exception to the application of the doctrine of claim preclusion. The doctrine does not apply "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. . . . A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." Licari, 298 F.3d at 666-67 (7th Cir. 2002) (citing Pliska v. City of Stevens Point, Wisconsin, 823 F.2d 1168, 1172 (7th Cir. 1987)).

In the present case, the plaintiffs were afforded a full and fair opportunity to litigate their claims in the state court foreclosure proceedings. The state court

Case 06-02085-pp   Doc 36   Filed 10/05/07   Page 29 of 34

proceedings "complied with the minimum procedural requirements of the Due Process Clause" and the plaintiffs had the opportunity to make an appearance at the state court foreclosure proceedings to advance arguments on their own behalf–they simply failed to do so. Because the plaintiffs were afforded a full and fair opportunity to litigate their claims in the foreclosure proceeding, the final factor in the claims preclusion analysis exists.

e.    *Claim Preclusion Bars the Plaintiffs' Claims Against GMAC*

The Court concludes that GMAC was in privity with MERS in the state court action, that the Racine County Circuit Court issued a final judgment in that action, that there was an identity of causes of action between the foreclosure action and the current federal court matter, and that the plaintiffs had a full and fair opportunity to litigate in the state court action. Therefore, the doctrine of claim preclusion applies, and bars the plaintiffs from litigating against GMAC any claims arising out of the January 31, 2003 mortgage. This bar includes not only any issue which the state court decided in the foreclosure action, but any issue which could have been litigated in the state court action, such as TILA violations and damages arising from those violations.

Accordingly, the Court must grant GMAC's motion to dismiss.

**C.    The Plaintiffs' Requests For Recoupment and Injunctive Relief Against USA Funding Fail to State a Claim Upon Which Relief May Be Granted.**

Although the Court finds that neither the <u>Rooker-Feldman</u> doctrine nor the doctrine of claim preclusion bar the plaintiffs' TILA claims against USA Funding, the Court concludes that the plaintiffs' requests for recoupment and injunctive relief

30

against USA Funding nonetheless must be dismissed, because they fail to state a claim upon which relief may be granted.

As discussed above, recoupment is "an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction." <u>Brown v. Gen. Motors Corp.</u>, 152 B.R. 935, 938 (Bank. W.D. Wis.1993). As has been noted several times, USA Funding was not a party to the state foreclosure suit. Therefore, the plaintiffs cannot obtain recoupment against USA Funding, because USA Funding has no judgment against the plaintiffs to which the doctrine of recoupment can apply.

Similarly, the plaintiffs' request for injunctive relief against USA Funding fails to state a claim upon which relief may be granted. USA Funding was not a party to the state court foreclosure suit and did not obtain a judgment of foreclosure on the property. Therefore, the plaintiffs cannot be awarded injunctive relief to prevent USA Funding from going forward with the state court foreclosure action, because USA Funding was not the party who obtained the foreclosure judgment in state court. Because USA Funding was not a party to the state court foreclosure judgment, the plaintiffs' claims for recoupment and injunctive relief fail to state a claim upon which relief may be granted as to USA Funding, and those claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## D. The Plaintiffs May Proceed With Their Remaining Claims Against USA Funding.

The plaintiffs' remaining claims against USA Funding ask for declaratory

judgment that USA Funding violated TILA and for various types of damages in relation to those alleged violations. For example, the plaintiffs request "relief within 15 U.S.C. § 1640 of twice the finance charge, $2,000 penalty and actual damages"; "judgment in favor of Plaintiff for statutory damages, costs and attorneys' fees as provided by 15 U.S.C. §§ 1640(a)"; compensatory damages in an amount to be determined at trial; "actual and exemplary damages as allowed by law for [yield spread premium] and [private mortgage insurance] fraud"; reasonable costs and attorneys fees; and pre- and post-judgment interest. (Compl. at 8-9.) The Court denies USA Funding's motion to dismiss on these claims, because neither the Rooker-Feldman doctrine nor the doctrine of claim preclusion bar those claims in federal court, and the allegations do state claims upon which relief may be granted.

## V.    CONCLUSION

The Court hereby finds as to defendant **USA Funding's** Motion to Dismiss:

that it has subject matter jurisdiction to hear the plaintiffs' claims against USA Funding, because those claims do not seek to redress an injury worked by the state foreclosure judgment and are not "inextricably intertwined" with the state court foreclosure judgment; and,

that USA Funding was not in privity with MERS in the state court action, and therefore that the doctrine of claim preclusion does not apply to bar the plaintiffs' claims against USA Funding; and

that the plaintiffs' claims for recoupment and injunctive relief against USA

32

Funding fail to state a claim upon which relief may be granted, because USA Funding was not a party to the underlying state court foreclosure action; and therefore

that USA Funding's motion to dismiss is **GRANTED** as to the plaintiffs' claims for recoupment and injunctive relief, and **DENIED** as to the plaintiffs' claims for declaratory judgment and damages.

The Court finds as to defendant **GMAC's** Motion to Dismiss:

that the <u>Rooker-Feldman</u> doctrine bars this Court's consideration of the plaintiffs' claims against GMAC for recoupment and injunctive relief because those claims are "inextricably intertwined" with the state court foreclosure action; and further,

that there was privity between MERS and GMAC in the state court foreclosure action; that there was a final judgment on the merits in the underlying state foreclosure action; that there is an identity of the causes of actions between the two suits; that the plaintiffs had a full and fair opportunity to litigate their claims against GMAC in the state court action; and that for these reasons, the doctrine of claim preclusion bars this Court's consideration of all of the plaintiffs' claims against GMAC; and therefore

that GMAC's motion to dismiss the complaint against GMAC is **GRANTED**.

33

The Court will contact the plaintiffs and USA Funding shortly to schedule a status conference regarding further proceedings in this adversary.

**SO ORDERED** this 5th day of October, 2007.


**HON. PAMELA PEPPER**
United States Bankruptcy Court


Cc.    Plaintiffs

Douglas P. Dehler, Esq.

Peter J. Plaushines, Esq.

Michael M. Riley, Esq.

34